### NEY v. NEY MANUF'G CO.

(Circuit Court of Appeals, Sixth Circuit. July 15, 1895.)

No. 257.

1. PATENTS—PRIOR ART—INFRINGEMENT—HAY-ELEVATOR TRACKS.
   The Ney patent (No. 287,772) for an improvement in hay-elevator tracks, if sustainable at all, is limited by the prior state of the art to the exact forms shown, and is therefore not infringed by a track made in accordance with the subsequent patents to Jacob and Valentine Ney (Nos. 395,714 and 467,387).

2. SAME—PRESUMPTION FROM ISSUANCE OF SUBSEQUENT PATENT.
   The issuance of a subsequent patent relating to the same subject-matter as a prior one raises a presumption of a patentable difference between them, though the applications were not pending at the same time in the patent office. Boyd v. Tool Co., 15 Sup. Ct. 837, applied.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This was an appeal from a decree in a suit in equity by the Ney Manufacturing Company to restrain Valentine Ney from infringing letters patent No. 287,772, issued on the 30th day of October, 1883, to the complainant, as the assignee of one Jacob Ney, for an improvement in hay-elevator tracks. By his answer the defendant attacked the validity of the patent, as being for a device which did not involve invention, and which had been anticipated by a number of patents. He averred that Jacob Ney was not the original inventor of the device, but that the same had been used long before he discovered it. He further averred that the machine alleged to be an infringement, which he was manufacturing, was constructed in accordance with two letters patent (Nos. 395,714 and 467,387) issued to Jacob Ney and the defendant, and that it did not infringe complainant's patent. Complainant's device consists of two parallel rails of angle iron, which are spliced so that the joints on one side of the track are opposite the solid portions of the opposite rails. The vertical flanges of the angle-iron rails are held at the desired distance apart, and parallel to each other, by spliced blocks and ferrules, and held together by suitable clamping bolts or rivets. The track is suspended and held in the proper position in the barn by means of hooks secured to the rafters or ridgepole of the building. The bases of these hooks are T-shaped, and embrace the downward projecting portions of the angle irons, the shank of the hook passing up between the angle irons. The traveling wheels of the carriage of the hay elevator run upon the horizontal flanges of the angle irons.

The claims alleged to be infringed were as follows: (1) "A track for hay elevators, composed of two parallel pieces, A, each constructed with horizontal and vertical flanges, with the vertical flanges united together, substantially as described." (3) "In a hay elevator, the combination of the parallel pieces, A, each having horizontal and vertical flanges, the suspending blocks, D, passing between the vertical flanges and having T-shaped ends, on which the parallel pieces are supported, and devices for spacing and holding the said pieces in proper parallel position, substantially as described." (4) "The combination in a hay elevator of two parallel pieces, A, each having horizontal and vertical flanges, with the suspending hooks, D, passing between the vertical flanges, and having T-shaped lower ends, upon which the parallel pieces are supported, substantially as described." The defendant's track is formed of two curved iron pieces, which are fastened together by clamps embracing their vertical portions, and leaving the upper curved portion free to form a tread or way for the trolley wheels. The clamp which secures these pieces together consists of a bar placed between them, with side pieces upon the outside of the vertical portion of the track iron, and a bolt passing through below the track irons to draw the three pieces together, and thus clamp the track iron. The upper part of the bar is formed into a loop to suspend the track. The two outer clamping pieces have shoulders on them for the edges of the track irons to bear against, and thus gauge their position; and the central bar also has a shoulder which the two outer pieces bear against, so as to take the strain off the bolt. There is one clamp shown, in which the upper or loop portion of the hanger bar is cut off, leaving it a mere filling block. Complainant averred in its bill, and introduced evidence tending to prove facts which it relied upon as estopping defendant from asserting the invalidity of its patent; but, as will be seen from the conclusion reached, the facts are not here material. The defendant introduced evidence to show that a wooden hay track, constructed in every respect with reference to spacing block hooks with T-shaped ends and broken splice, had been in use in two barns since 1878 and 1881.

Fred. W. Bond (Paul A. Staley, of counsel), for appellant.

Charles E. Miller (M. D. Leggett, of counsel), for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The state of the art with respect of hay elevators was such that, even if the complainant's patent can be sustained, it must be limited to the exact form shown. In the hay elevator of C. A. Miller patent, July 19, 1870, use is made of two parallel wooden tracks, having vertical flanges and horizontal flanges arranged in parallel lines, and secured to each other by spacing blocks at the end of the beams forming the track, and suspended by hooks to the joists of the barn. The traveling carriage is on trolley wheels, which run upon the horizontal flanges of the tracks, and the hay is suspended by a rope which hangs down from the trolley carriage between the two tracks. In the Gordon F. Prindle patent for hanging sliding doors, angle irons are used, arranged in parallel lines on top of the casings or frames of the doors or gates. The trolley wheels run upon the horizontal flanges of the angle irons, and are held into position by the vertical flanges thereof, and the door is suspended to the axle connecting the two wheels by hangers which pass down between the angle irons. In Corbin's patent for an improvement in railway tracks, angle irons are used with vertical and horizontal flanges held parallel to each other by tubes extending from the inside of one vertical flange

to the inside of the other, in which tubes are rods which pass through the flanges, and are bolted on the outside of each vertical flange, thus forming exactly the same device for firmly holding the vertical flanges parallel seen in the ferrules of the complainant's device. In Wendel's apparatus for hoisting and tiering cotton, the cotton is carried from one part of the building to another on a carriage with trolley wheels, which run upon the horizontal flanges of a trough-shaped track superimposed on a beam suspended by rods from the roof. It does not appear exactly how these rods are connected with the beam, but there is a suggestion in the drawings that there is a T-shaped ending embracing the lower part of the beam. In the Bowman patent for an improvement in railway tracks, issued in 1878, wooden tracks are maintained in parallel position by spacing blocks through which rivets run, bolted outside of the tracks; and this device shows a splicing of the pieces forming the track so that the joints of either line will come opposite the middle of the timbers of the opposite line. In Chamboard's patent for a hay elevator, issued in 1882, the track is made up of two long wooden beams, upon the horizontal top of which the trolleys of the elevator carriage run. The two beams are connected together by a middle beam somewhat lower down than the exterior beams, and not made so long, in order that there may be an open space between the tracks at certain points along the track. The track thus constructed and riveted together is suspended from the ridgepole of the barn by rods and clevises. The rods extend down through the middle beam, and there is shown in the drawing a T-shaped ending for at least one of the rods. Considering that angle irons had been used before to form tracks, that vertical and horizontal surfaces of wooden beams had been used for the same purpose, that their parallelism had been maintained by spacing blocks, that strength in the structure as a whole had been secured by splicing the pieces of one track at points opposite the solid portion of the pieces of the other, and that such tracks had been suspended from the ridgepole or rafters of the barn in which the hoisting was to be done by pieces passing up between the two tracks, we are of opinion that, if the patent sued on is to be sustained at all, the combination claims made therein must be limited to the exact forms shown, and that such claims are not infringed by tracks made of iron that are not angle irons, that are held together by clamps which do not involve the use of rivets passing through the vertical flanges, and that are not suspended from the roof or timbers by hooks which operate independently of the spacing blocks, and serve no function as such. The conclusion we reach is quite like that reached by the supreme court of the United States in the case of Boyd v. Tool Co. (decided May 20, 1895) 15 Sup. Ct. 837. In this case, as in that, both parties were manufacturing machines under a patent. Mr. Justice Shiras uses this language:

"Upon the assumption that, owing to the previous condition of the art, Boyd is to be restricted to the exact and specific devices claimed by him as novel, we do not deem it necessary to determine whether either Boyd or Strickler invented anything, because we think that the appellant has failed to show that the defendants have used the particular devices to which Boyd

can be considered entitled. Our discussion, therefore, will be confined to the question of infringement. As both applications were pending in the patent office at the same time, and as the respective letters were granted, it is obvious that it must have been the judgment of the officials that there was no occasion for an interference, and that there were features which distinguished one invention from the other. In American Nicolson Pavement Co. v. City of Elizabeth, 4 Fish. Pat. Cas. 189,[1] Mr. Justice Strong said: 'The grant of the letters patent was virtually a decision of the patent office that there is a substantial difference between the inventions. It raises the presumption that, according to the claims of the latter patentees, this invention is not an infringement of the earlier patent.' It would seem to be evident that as the purpose of the invention was the same, and as the principal parts of the respective machines described were substantially similar, it was also the judgment of the office that the distinguishing features were to be found in some of the smaller, and perhaps less important, devices described and claimed. Burns v. Meyer, 100 U. S. 671."

This language has full application to the case at bar, for, though the patents were not pending in the office at the same time, the presumption from the granting of the second patent, in view of the previous issue of the first, would not seem to be different.

We do not pass upon the question of the validity of the Ney patent, because, in the view just stated, it is unnecessary. The same conclusion renders it unnecessary for us to consider the estoppel which the court below held prevented the defendant from attacking the validity of the complainant's patent. The decree of the lower court, therefore, is reversed, with directions to dismiss the bill.